## In Re MISSISSIPPI & FOX RIVER DRAINAGE DISTRICT; JOHN BUSCHLING et al., Petitioners, v. JOHN ACKLEY et al., Objectors, Appellants.

### In Banc, February 24, 1917.

1. **DRAINAGE DISTRICT: Municipal Corporation.** A drainage district is a municipal corporation, and must be provisionally incorporated as such before any step can be taken looking to the drainage of land embraced therein.

2. ————: **Appeal.** The right of appeal from a decree incorporating any municipal corporation is limited.

3. ————: **Property Rights Affected by Incorporation.** That a person or his property has been included in a drainage district in no manner affects his rights, provided his property has not been benefited or damaged.

4. ———: Right to Appeal: For What Things Authorized. Notwithstanding the statute (Laws 1913, sec. 116, p. 241) says that "any person may appeal from the judgment of the court" in a drainage district case, the subsequent words of the statute limit the inquiry of the appellate court (1) to the compensation allowed for property taken and (2) to the damages allowed for property prejudicially affected by the improvement. It is the taking or damaging of property, and not the incorporation of the district, that affects the owner's rights and authorizes his appeal.

5. ———: ———: Incorporation. Objectors are not entitled to an appeal from the judgment of the circuit court incorporating a drainage district, if the court has jurisdiction of the subject-matter.

6. ———: ———: ———: Raised in Suit on Tax Bill. Whether a drainage district has been legally incorporated or not can be raised in a suit on the tax bills.

7. ———: ———: Incorporated for Unauthorized Purpose. There is a wide difference between a drainage district and a levee district; and while the question of whether a district organized as a drainage district was in fact a levee district may be properly raised on an appeal from a decree incorporating it, since lack of jurisdiction of the subject-matter may be shown in any suit involving it, yet the better practice is to raise the question of legality of incorporation in the suit on the tax bills. [Distinguishing Birmingham Drainage District v. Milwaukee Ry. Co., 266 Mo. 60, and Elsberry Drainage District v. Harris, 267 Mo. 139.]

8. ———: ———: General Statute Inapplicable. The general statute governing appeals does not apply to a drainage district case. The proceeding in such case is purely statutory, and there can be no appeal unless the drainage act, which is a complete code unto itself, authorizes it.

9. ———: ———: Why Appeal from Judgment of Incorporation is Not Allowed. The decree incorporating a drainage district is preliminary, informal, tentative and conditional and not a final decree adjudicating any one's rights from which an appeal will lie.

Appeal from Clark Circuit Court.—*Hon. N. M. Pettingill*, Judge.

APPEAL DISMISSED.

*E. R. McKee* and *Boyd & McKinley* for appellants.

(1) Respondents' motion to dismiss this appeal should be overruled, as an appeal from a decree incor-

porating a drainage district is authorized and has been recognized as a proper procedure for the purpose of having the action of the circuit court incorporating a drainage district reviewed. (a) The circuit court is given original and exclusive jurisdiction of the incorporation of a drainage district such as that sought to be incorporated by respondents. Laws 1913, sec. 3, pp. 234, 235; Sec. 3956, R. S. 1909. Any parts to a civil suit has a right to appeal in every cause, unless there is a constitutional prohibition against the appeal. Sec. 2038, R. S. 1909. Sec. 36, Laws 1913, p. 253, appears to indicate that there is no limitation or restriction upon the right to take an appeal from any action of the circuit court had under the act. Sec. 1927, R. S. 1909, authorizes a change of venue in a civil suit and in State ex rel. v. Riley, 203 Mo. 175, 12 L. R. A. (N. S.) 900, it was expressly decided that a drainage proceeding was a civil suit within the meaning of the above statute. (b) Statutes pertaining to appellate procedure are entitled to a liberal construction. Stid v. Railroad, 211 Mo. 411. A final judgment is one where the court's jurisdiction over the matter in question before the court is exhausted. State ex rel. v. Bland, 189 Mo. 216. The right of appeal not being prohibited by the Constitution or by the drainage act appellants may appeal under the general provision that there is an appeal from any decision of the circuit court with reference to a civil suit. Sec. 2038, R. S. 1909; Sec. 36, Laws 1913, p. 253; Weston v. Charleston, 2 Peters, 449; Hockemeyer v. Thomuson, 150 Ind. 176; Crune v. Wilson, 104 Ind. 543; Kings Lake Drainage District v. Jamison, 176 Mo. 564; Drainage District v. Voltmer, 256 Mo. 152; Birmingham Drainage District v. Chicago, M. & St. P. Ry. Co. 178 S. W. 893; Squaw Creek Drainage District v. Turney, 235 Mo. 80; Elsberry District v. Harris, 184 S. W. 89. (c) The Circuit Court Drainage Act of March 24, 1913, is not a special statute, but is a part of general legislation on the question of drainage and has connection with other similar statutes and can trace its origin to an act in 1879. It was passed with a view to the harmonious develop-

ment of the law on this question and to making it a part of the general laws of the State. Birmingham District v. Railroad, 178 S. W. 895; State v. Taylor, 224 Mo. 393. The decree of incorporation of a drainage district is a final determination by the court on that question. Big Lake District v. Rolwing, 178 S. W. 112.

*Charles Hiller, John M. Dawson* and *T. L. Montgomery* for respondents.

The decree incorporating the district is a purely experimental proceeding, for the purpose of ascertaining if a drainage district can be formed under the supervision of the court to be thereafter determined in its order. It is not a final decree or judgment from which an appeal lies. The drainage laws, a special code of procedure, make no provision for this appeal. The motion to dismiss should be sustained. (a) The drainage act is a code unto itself, every step is specifically pointed out and the procedure designated, and the act is to be liberally construed in carrying out this legislative intent and purpose. Secs. 4, 16, 37 and 62, Laws 1913, p. 232; State ex rel. v. Bates, 235 Mo. 293; State ex rel. v. Bugg, 224 Mo. 554. (b) It was not the legislative intent to allow an appeal at this stage in the procedure. There are no inherent rights of individuals involved in remedial procedure and no constitutional provision, either State or Federal, is violated in denying an appeal. State ex rel. v. Taylor, 224 Mo. 393; St. Louis v. Calhoun, 222 Mo. 44; Clark v. Kansas City Railway Co., 219 Mo. 524. (c) There is no obligation imposed by bringing the individual into the district; if his property is not benefited under the law his rights are in no way affected under the Drainage Act. Land & Live Stock Co. v. Miller, 170 Mo. 256; Drainage District v. Railroad, 236 Mo. 107; Page & Jones on Taxation by Assessment, sec. 743; Spencer v. Merchant, 125 U. S. 345; Morrison v. Morey, 146 Mo. 563; Hager v. Reclamation District, 111 U. S. 701; Irrigation District v. Bradley, 164 U. S. 112; C. B. & Q. Ry. Co. v. Drainage Commrs., 200 U. S. 56; State ex rel. v. County Commrs., 87

Minn. 336; Irrigation District v. Williams, 76 Cal. 367. (d) The drainage act being purely a statutory proceeding both as to the tribunal and the character of the proceedings was unknown to the common law and is special and constitutional and the provisions of the code of civil procedure are not applicable thereto. State ex rel v. Spencer, 166 Mo. 285; State ex rel. v. Hough, 193 Mo. 615; Terminal Ry. & B. Co. v. Atchison, 137 Mo. 218; Rothman v. Railroad, 113 Mo. 143; Drainage District v. Campbell, 154 Mo. 151; Anderson v. Pemberton, 89 Mo. 64; Railroad v. Townsite Co., 103 Mo. 457; State ex rel. v. Slover, 134 Mo. 15. (e) The district is not a corporation within the meaning of the Constitution, cannot demand a jury, and the issues are to be tried by the court in a summary manner without delay. Kansas City v. Vineyard, 128 Mo. 78; Sec. 4, Laws 1913, p. 235; Drainage District v. Tourney, 235 Mo. 80, l. c. 95; State ex rel. v. Eicher, 178 S. W. 173. (f) The only appeal authorized by the act is found in Section 16, p. 241, Laws 1913, and what questions alone to be determined are set forth. The right of appeal is by the act limited. The Legislature has a right to so limit it or to dispense with any appeal at any stage of the proceedings, leaving any judgment rendered liable to be attacked either directly for fraud or collaterally on the ground that it is void on its face. Drainage Dist. v. Railroad, 216 Mo. 715. This appeal does not come within the only statute which can authorize it and the motion to dismiss should be sustained. Sec. 16, Laws 1913, p. 241; Tie Co. v. Drainage District, 226 Mo. 441; Sutherland on Statutory Construction, sec. 234, p. 309.

WALKER, J.—This is an appeal from a judgment of the circuit court of Clark County incorporating the Mississippi & Fox River Drainage District in said county.

The controversy arose out of a misunderstanding between the landowners and petitioners asking for the incorporation; some contended that they signed the pe-

tition under a misapprehension of the facts, others changed their minds and desired to withdraw their names from the petition and that they be included in an adjoining district, and so informed the court; the remainder were content with the proposed district. All of these facts (the details of which are immaterial) finally led to an order of the court dismissing the cause as to certain objectors, and thereupon the remaining petitioners filed an amended petition asking for the incorporation of the district now in controversy.

The district as described in the amended petition did not meet with the concurrence of all the landowners included, and excluded therefrom, and consequently a new attack was made thereon by certain property owners named therein.

All of their objections were by the court overruled, and a decree was entered incorporating the last proposed district; from that action the objecting landowners appealed to this court.

Upon the cause reaching this court counsel for respondents filed a motion to dismiss the appeal for the reasons:

First: "That the decree appealed from is not a final decree, judgment or order of the circuit court of Clark County, Missouri."

Second: "That the decree appealed from is not a decree, judgment or order on which an appeal will lie to this court."

Third: "That no appeal is authorized by law in this cause to this court."

While there are some minor questions presented by the record, they are more of a personal than a legal character; the major proposition involved herein is one of law pure and simple, and that is, does an appeal, under the statutes of this State, lie from a decree of the circuit court incorporating a drainage district?

Counsel for appellants assert the affirmative, counsel for respondent the negative. Counsel for respondents rely upon section 16, page 241, Laws 1913, in support of their contention. It should be borne in mind that a

drainage district is, by express statute, a municipal cor-
poration and must be provisionally incorporated as such
before any step can be taken looking to the drainage
of the land embraced therein.    The section mentioned
reads as follows:

"Sec. 16.    The drainage district or any owner of
land or other property in said district, may file excep-
tions to said report or to any assessment for either
benefits or damages, within ten days after the last day
of publication of the notice provided for in the preceding
section.    All exceptions shall be heard by the court and
determined in a summary manner so as to carry out
liberally the purposes and needs of the district, and if
it appears to the satisfaction of the court, after having
heard and determined all of said exceptions, that the
estimated cost of constructing the improvement contem-
plated in the 'plan for reclamation' is less than the bene-
fits assessed against the land and other property in said
district, then the court shall approve and confirm said
commissioners' report as so modified and amended.    The
court shall adjudge and apportion the costs incurred by
the exceptions filed and shall condemn any land or
other property, within or without the boundary lines
of the district, that is shown by the report of the com-
missioners to be needed for rights of way, holding basins
and other works, or that may be needed for material
to be used in constructing said works, following, as
nearly as possible, the procedure that is now provided
for by law for the appropriation of land and other
property taken for telegraph, telephone and railroad
rights of way.    The clerk of said circuit court shall
transmit a certified copy of the court decree and copy
of the commissioners' report, as confirmed or amended
by the court, to the secretary of the board of supervisors
of the district, who shall make and transmit a certified
copy of the said decree and that part of the said report
affecting land in each county to the recorder of each
county having lands in the district, or affected by the
said report, where the same shall become a permanent
record and each such recorder shall receive a fee of

one dollar for receiving, filing and preserving the same. *Any person may appeal from the judgment of the court, and upon such appeal there may. be determined either or both of the following questions: First, whether just compensation has been allowed for property appropriated; and, second, whether proper damages have been allowed for property prejudicially affected by the improvements.*" [The italics are our.]

The peculiar wording of the first clause of the italicized portion of the statute should be noted, viz: "Any person may appeal from the judgment of the court." This language is general in its terms, and if it were not limited by what follows, an appeal would bring up all questions involved in the case; but the remainder of the section limits the authority of this court to determine either or both of the questions above italicized.

This is no other statutory provision for an appeal in drainage cases organized under the circuit court article. This is not unusual, because in most if not in all cases arising out of municipal legislation the right of appeal is more .or less limited; especially is this true regarding an appeal from an act or decree incorporating a municipal corporation. In fact, it would be unusual and strange if an appeal from such a decree should be authorized. If it be true that an appeal lies from a decree incorporating a drainage district, or any other municipal corporation, then the question would naturally arise, who should or may take it, and when? This and other courts of this country have repeatedly held that the mere fact that a person or his property has been included in a drainage district, in no manner affects his rights, provided his property has not been benefited or damaged. [Mound City Land & Stock Co. v. Miller, 170 Mo. 240, l. c. 256; Little River Drainage District v. Railroad, 236 Mo. l. c. 107; Ross v. Board of Supervisors, 1 L. R. A. (N. S.) l. c. 437; Spencer v. Merchant, 125 U. S. 345; Morrison v. Morey, 146 Mo. l. c. 563; Hagar v. Reclamation District, 111 U. S. 701; Fallbrook Irrigation District v. Bradley, 164 U. S. 112; C. B. & Q. Ry. Co. v. Drainage Commrs., 200 U. S. 561; State ex

rel. v. Board of County Commrs., 87 Minn. 1. c. 336; Irrigation District v. Williams, 76 Cal. 1. c. 367.]

There is no pretense that the decree of incorporation affects appellants' property rights, directly or indirectly, but upon the contrary the Act of 1913, before mentioned, expressly provides that after the district has been incorporated, that is tentatively, and not before, a board of directors shall be elected, etc., and they shall appoint commissioners to assess benefits and damages that may be sustained by the property situate in said district on account of said improvements.   [Secs. 5 to 14, Laws 1913, pp. 235–240.]

Sections 15 and 16 of the same act provide for notice to the property owners of said assessments, and authorize them to file exceptions thereto to be heard by the court in a summary manner, etc., and to render judgment modifying, confirming or rejecting the report of the commissioners assessing benefits and damages as the evidence may warrant, and from that judgment an appeal may be taken, but the authority of this court is limited, as before shown, first, to an inquiry as to compensation allowed for property taken, and, second, as to the damages allowed for property prejudicially affected by the improvements.

From this it is evident that it is the taking or damaging of the property, and not the incorporation of the district, that affects the owner's rights and gives him the right to an appeal.   This identical question came before this court in the case of Drainage District No. 4 v. Railroad, 216 Mo. 709.   Judge VALLIANT (p. 715). speaking for the court, said:

"A right of appeal is one given by statute and in order that a party may avail himself of the right conferred he must conform to the requirements of the enabling statute.   The General Assembly might, if it had seen fit to do so, have made the judgment of the county court in such case final and allowed no appeal, in which event the judgment could be attacked only either directly for fraud, or collaterally on the ground that it was void on its face.   In this kind of proceeding the statute gives

an appeal, but it prescribes the method to be pursued in taking the appeal and limits the questions that may be litigated in the appellate court. The General Assembly has been careful to express the limitations on this right, and also on the scope of the litigation after the appeal is taken, saying who may appeal, when and how the appeal may be taken, and what questions may be heard by the circuit court when the cause reaches that court. When we notice the changes or amendments that have been made in the statutes on these points we see that the General Assembly has acted with deliberation.

"Section 8292, as it appears in Revised Statutes 1899, says: 'Any person or corporation party to proceedings may, . . . file exceptions to the apportionment, or to any claim for compensation or damages at any time before the day set for the hearing of said report by the court.' It then provides that the court may hear the evidence and pass judgment on the exceptions. Then it says: 'Any person or corporation may appeal from the order of the court, and upon such appeal may determine either of the following questions: First, whether such improvement will be conducive to public health, convenience or welfare, or the location of any part changed; second, whether the route is practicable; third, whether compensation has been allowed for property appropriated; fourth, whether proper damages have been allowed for property affected by the improvements. The appellant shall pray an appeal and file a motion, in writing, specifying therein the matters appealed from, which motion shall be filed and recorded.' We will note that it is there specified who may file exceptions, to what the exceptions may relate, who may appeal from the order sustaining or overruling the exceptions, how the appeal may be taken and what questions may be heard on the appeal. In 1903 that section was amended so as to reduce the questions that might be litigated on appeal from four to two: 'First, whether compensation has been allowed for property appropriated; second, whether proper damages have been allowed for property affected by the improvements.' The amendment also

provided that the appeal should not stay the proceedings in the county court or delay the work, but the proceeding subsequent to taking the appeal should affect only 'the rights and interests of the property located in such drainage district owned by appellant or appellants.' [Laws 1903, p. 235.]

"In 1905 the section was again amended, so that instead of the persons or corporations who might file exceptions and who might appeal from the ruling of the court thereon as specified in the original section and repeated in the amendment of 1903, it was said: 'Any person whose lands are affected by the proposed improvement' may file exceptions, etc., and appeal from the ruling of the county court thereon. The Act of 1905 corrects also the awkward wording of the last sentence of the amendment of 1903, so as to read: 'And any subsequent proceedings in the circuit court shall affect only the rights and interest of the appellant in property located in such drainage district.' [Laws 1905, p. 185.] This section 8292, Revised Statutes 1899, rewritten so as to embody the amendments above noted, appears as section 8292 in Mo. Ann. Stats., vol. 4, pages 3922-3, and as it there appears is now the law.

"Thus we see that the General Assembly has with great particularity limited the subjects to which the exceptions may relate, has limited the right of appeal to the ruling of the court on those exceptions and limited the questions to be considered by the circuit court on the appeal."

The only difference between that case and this one is that the statutes there under consideration were the acts of 1903 and 1905 and contained in the article applicable to the incorporation of such districts in the county court, instead of the circuit court, as here, and the grounds of appeal there were four in number instead of two, as in the Act of 1913. By reading the various acts it will be seen that the Legislature, by the last, limited the grounds of appeal from four in the former acts to two in the latter. This shows that it was

the policy and purpose of the Legislature to limit the right of appeal in drainage cases.

The same question again came before this court in the case of the Western Tie & Timber Co. v. Naylor Drainage District, 226 Mo. 420. Judge BURGESS (p. 440), speaking for the court, said:

"The first question presented by this record for determination is, will an appeal lie from the judgment of the county court incorporating a drainage district under article 4 of chapter 122, Revised Statutes 1899, to the circuit court?

"This same question was presented to this court in the case of Drainage District v. Railroad, 216 Mo. 709. That was a proceeding instituted, under the same article, in the county court of Chariton County, for the purpose of organizing a similar district." After quoting with approval the limitations on the right of appeal in cases of this character as held in Drainage District v. Railroad, supra, Judge BURGESS says:

"After the Acts of 1903 and 1905, mentioned in said opinion, became operative, they became applicable to all subsequent proceedings had in the case at bar. [State ex rel. v. Taylor, 224 Mo. 393.]

"We are, therefore, of the opinion that appellant was entitled to an appeal from the order of the county court of Ripley County, organizing said drainage district, etc.; but by the express terms of said acts, the authority and jurisdiction of the circuit court was limited to the trial and determination of 'either one or both of the following questions:

" 'First, whether compensation has been allowed for property appropriated; and, second, whether proper damages have been allowed for property prejudicially affected by the improvements.' "

These are the only cases that have dealt with the question of the right of appeal since the statutes upon that subject have been amended.

The main reliance of counsel for appellants is upon the case of King's Lake Drainage & Levee District v. Jamison, 176 Mo. 557. It does not support the conten-

tion of counsel. The statute there under consideration, Sec. 8331, R. S. 1899, expressly provided for an unlimited appeal, as follows:

"If the finding of the court be in favor of the validity of the proceedings, the court, after the report shall have been modified to conform to the findings, or, if there be no remonstrance, the court shall confirm the same, and the order of confirmation shall be final and conclusive, and the proposed work be established and authorized and the proposed assessments approved, subject to the right of appeal to the Supreme Court, as in other actions."

The various amendments of the statute, after the decision in the King's Lake Drainage District case, supra, was rendered, limiting the right of appeal to specifically designated questions therein stated, is quite significant of the fact that the Legislature intended to and did take away the right of appeal from the decree incorporating the district, as well as from all other questions not specifically provided for in the act.

The next case relied upon by counsel for appellants is that of In re Drainage District v. Voltmer, 256 Mo. 152. While there is language in that opinion which lends color to counsel's contention, an examination shows that the appeal was taken from the judgment confirming the report of the commission assessing damages and benefits to property affected by the proposed improvements, and not from the decree incorporating the drainage district. In fact, the district had long before been incorporated by a decree of the circuit court of Andrew County, where the cause had been transferred on change of venue, and after having been certified back to the circuit court of Holt County, as provided by law, the proceedings complained of were had in the latter court, and had nothing to do with the incorporation of the district in the Andrew County Circuit Court. In fact, the question of the incorporation of the district was not mentioned except as above indicated. Therefore, that case lends appellants no assistance.

The next case cited by counsel for appellants is that of Birmingham Drainage District v. Chicago, Milwaukee & St. Paul Ry Co., 266 Mo. 60. The ruling therein is not in point. The real question there was whether or not the district was in fact incorporated for the purposes authorized by the Act of March 24, 1913, namely, to drain swamp and overflowed lands, or to construct an extensive levee system along the Missouri River in front of the proposed district, and only incidentally, if at all, drain the lands included therein. In other words, the contention was that the statute enacted for one purpose was applied for a wholly different purpose from that designated by the Legislature, and therefore the corporation was not in fact a drainage district, but a levee district, and therefore acquired no jurisdiction over the lands embraced therein.

That question could have been and was properly disposed of on appeal; but it also could have been raised in a suit on the tax-bills, for lack of jurisdiction may be shown in any suit involving that question; and the better practice would be to raise the question by answer in a suit on such bills. The question involved was not so much as to the validity of the decree of incorporation, as it was to the application of the act to accomplish a purpose foreign to the design of the Legislature. Under those facts, while the validity of the decree of incorporation was involved, it was only incidental to the larger questions, first, is there a difference, within the meaning of said act, between a drainage system and a levee system, and, second, if so, did the act authorize the construction of a levee system instead of a drainage system?

Attending the first: In a sense there is a wide difference between the two; a drainage system is designed primarily to drain or draw water from swampy and overflowed lands, and secondarily to prevent water from accumulating thereon by the overflow from streams, backwater, etc.; while a levee system, like a drainage system, may primarily be intended to prevent water from accumulating upon such lands by overflow and backwater, its purpose secondarily may be to collect

water upon such lands and hold the same for commercial or other purposes; most of the latter purposes are usually accomplished by the construction of a dam, but not always so, especially when the purpose is to store large bodies of water for irrigating purposes; in such cases a system of levees, or levees and ditches are resorted to.

It was in the latter sense that the defendant in the Birmingham Drainage District case insisted the district was being constructed, and not all for drainage purposes, within the meaning of the act. That clearly involved a jurisdictional question of the district over the land.

While this court discussed certain other questions presented in that case, they were minor ones and only incidental to the main question presented and decided, namely, that it was in fact a drainage district and not a levee district. Moreover, the question here presented was not made or discussed by court or counsel in that case. That case has but little relevancy to the question here under consideration, and that only in an incidental manner.

Elsberry Drainage District v. Harris, 267 Mo. 139, is similar to that of the Birmingham Drainage District case. The facts in that case were as follows: the plaintiff undertook to extend the boundaries of its district by adding the lands of the defendants. The evidence showed that the real purpose of the proposed extension was not to drain the objecting defendants' lands; that the plan would not necessarily effect this result; that the district, as originally constructed, only included lands south of a certain creek, and the extension was to include certain lands lying north thereof, a part of which belonged to the objectors, the appellants; that the lands to be actually drained were to be by a ditch to be constructed under said creek and extended to the district pumping plant; and that the real purpose of the entire scheme was to enable other individuals owning land north of said creek to drain their lands and to reap the profit to be realized from their reclamation at

the expense of the objectors. In other words, the objectors' lands were not included in said proposed extension for drainage purposes, but for the purpose of acquiring lands upon which to construct levees and drains to drain the lands of others, and that, too, at the expense of the objectors.

Clearly that was not the purpose of the Legislature in enacting the statute. Under that view of the case, the district had no legal authority or power to include the objectors' lands within its boundaries for taxable purposes. In other words, it acquired no jurisdiction over said lands; and this court in legal effect properly so held in the determination of that case. The incorporation of the district in that case was not questioned, as in the case at bar; only the right to tax objectors' lands was involved. So far as the incorporation was concerned it was held to be valid. While it is true the objectors could have made the same defense in a suit on the tax-bills, yet they were not compelled to do so, for the elementary reason that the lack of jurisdiction over the subject-matter may be shown at any time in any suit or proceeding involving that question, even in a collateral proceeding.

It was not the design of the Legislature in limiting the right of appeal in drainage cases to deny to one affected thereby the right to question the jurisdiction of the district over the subject-matter thereof; and if that were the intention then clearly the statute to that extent, at least, would have been unconstitutional. This is expressly provided for by section 20 of article 2 of the Constitution of 1875, as follows:

"That no private property can be taken for private use, with or without compensation, unless by the consent of the owner, except for private ways of necessity, and except for drains and ditches across the lands of others for agricultural and sanitary purposes, in such manner as may be prescribed by law; and that whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and as

such judicially determined, without regard to any legislative assertion that the use is public.''

In the Elsberry as in the Birmingham case, the question here presented was not presented, discussed or decided except as previously stated. That case, therefore, is not applicable to the case at bar. The other two cases cited by counsel for appellants arose under acts antedating the act of 1913 and are therefore inapplicable.

Counsel for appellants also insist that under section 2038, Revised Statutes 1909, the general statute governing appeals applies in this case, and cite in support thereof State ex rel. v. Riley, 203 Mo. 175. Counsel misinterpret the ruling in that case. There we use this language: ''We are of the opinion that in drainage cases the modes of procedure and the rules of practice prescribed by our civil code may be used to supply omissions in the drainage statutes''—clearly indicating that the general statutes could not displace statutes especially applicable to drainage cases.

The drainage act being purely a statutory proceeding, both as to the tribunal and the character of the proceedings, was unknown to the common law and the act is special and constitutional and the provisions of the code of civil procedure are not applicable thereto. In its present amended form it is a code unto itself. It is in all respects as to its provisions like the election law, forcible-entry-and-detainer law, road law and eminent-domain statutes, and should be strictly followed and so construed, independent of the civil code. This is especially true on appeal. [State ex rel. Hancock v. Spencer, 166 Mo. l. c. 285; State ex rel. Wells v. Hough, 193 Mo. 615; Leavenworth Terminal Ry. & B. Co. v. Atchison, 137 Mo. 218; Rothan v. Railway, 113 Mo. l. c. 143; Nishnabotna Dr. Dist. v. Campbell, 154 Mo. 151; Anderson v. Pemberton, 89 Mo. 64; Railroad v. Randolph Townsite Co., 103 Mo. l. c. 457; State ex rel. Keshlear v. Slover, 134 Mo. l. c. 15.]

The drainage act is a separate and distinct statute. Since the various amendments thereto it is a complete code unto itself. Not being placed in the statute under

the civil code of procedure, it is independent of it and is not governed by it. Consequently the procedure thereunder is not as in an ordinary civil case within the meaning of the code of civil procedure and is not governed by it. Section 2038, Revised Statutes 1909, has, therefore, no application.

Section 4 of the act provides that the objections filed be limited to denial of the statements in the articles of association and be heard by the court in a summary manner without delay. Are they true or false? No other question can be raised. There is but little to try. A reason why no appeal is provided for in the act is evident from the fact that this proceeding to incorporate is preliminary, informal, tentative and conditional and not a final decree adjudicating any one's rights from which an appeal lies. The incorporation of the district simply organizes an entity with which to further proceed to effect reclamation to be hereafter accomplished, if possible, in orderly and well defined procedure. [Drainage District v. Railroad, 216 Mo. 709; Carder v. Fabius Riv. Dr. Dist. No. 3, 262 Mo. 542; Squaw Creek Dr. Dist. v. Turney, 235 Mo. l. c. 95; State ex rel. Roberts v. Eicher, 178 S. W. l. c. 173.]

From all of which it follows that the motion to dismiss the appeal should be sustained, and it is so ordered. All concur except *Williams, J.,* not sitting.